DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 17-00041 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| DAOQIN LIU, YUNKAI LU, and ZIWEN WENG, | ) | Re: Motion to Transfer Venue |
| Defendants. | ) | |

On October 2, 2017, Defendant Yunkai Lu moved to transfer venue from this district to the Central District of California. On October 19, 2017, Defendant Ziwen Weng also moved to transfer venue of his trial herein to the Central District of California. Prior to Defendant Weng's motion, Defendant Daoqin Liu pleaded guilty to the indictment herein. On October 25, 2017, the court heard Weng and Lu's motions and took the matter under submission at the conclusion of the said motions. The court now renders its decision.

**BACKGROUND**

Defendants Lu, Weng, and Liu were arrested on or about September 14, 2017 and charged in a Complaint filed in this court with the offense of Possession of Fifteen or More Unauthorized Access Devices. Defendants made their appearances on September 15, 2017 and detained and the matter was set for a preliminary hearing on September 29, 2017.

Defendants were indicted by the grand jury on September 27, 2017. They made their initial appearances on the indictment on October 2, 2017 and the court entered their not guilty pleas and set the matter for trial on December 6, 2017. Defendants Lu and Weng subsequently filed motions to transfer venue while Defendant Liu pleaded guilty to the charge in the

indictment.

In his moving papers, Defendant Lu states that he is an 18-year-old Chinese national who is a permanent resident of the United States. It is alleged that he speaks no English at all. He arrived in Guam via Narita on a United Airlines flight. Defendant Lu further states that he accompanied Defendant Weng and Defendant Liu to Guam "to purchase expensive merchandise using alleged counterfeit credit cards." Defendant Lu alleges he was recruited by Defendant Liu at the behest of an individual named "Ace" who works for a Chinese organization in California. Ace allegedly gave the cards to Liu and also gave him orders and directions on what to do with the credit cards and merchandise. All of these events occurred in California before any of the defendants arrived in Guam.

Defendant Weng is a 19-year-old resident of Los Angeles, California. He allegedly posted an ad for work and a person identified as "AD" responded and arranged a meeting. "AD" was later identified to be Defendant Liu. Defendant Weng met twice with Defendant Liu. Liu allegedly recruited Weng and Lu to travel from Los Angeles to Guam to go shopping. Defendant Weng would earn $10,000 for his part. It is alleged that Liu gave Weng and Lu approximately 118 credit cards. Liu instructed them to sign the back part of the credit cards, wrap them in foil, hide them in cigarette boxes, and conceal them in their luggage. Thereafter, Defendants boarded flights to Guam.

A transfer of venue for trial is permitted under the Federal Rules of Criminal Procedure.

Federal Rules of Criminal Procedure 21(b) provides:

(b) For Convenience. Upon the defendant's motion, the court may transfer the proceedings, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice.

FRCrP 21 (b).

In *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-244 (1964), the Supreme Court of the United States outlined various factors that the court must consider in addressing venue transfer motions. These factors are:

1. Location of the defendant.
2. Location of possible witnesses.
3. Location of events likely to be at issue.

    4. Location of documents and records likely to be involved.
    5. Disruption of defendant's business unless the case is transferred
    6. Expense to the parties.
    7. Location of counsel
    8. Relative accessability of the place of trial.
    9. Docket condition of each district.
   10. Any other special elements which might affect the transfer.

Defendants argue that the majority of those factors when considered weigh in their favor while the government argues that it weighs in its favor. The court will review the factors below.

1. Location of Defendants.

Defendants Lu and Weng are in Guam after having been arrested upon arrival at the Guam International Airport when counterfeit access devices were found in their possession. Defendants are young men who reside in Los Angeles, California.

Defendants' residence in California, however, does not in itself entitle them to be tried in their home district in California. See *Platt*, 376 U.S. at 245 (noting that the defendant's residence has no "independent significance," and should not be given dispositive weight); *United States v. McManus*, 535 F.2d 460, 463 (8th Cir.1976) ("Criminal defendants have no constitutional right to have a trial in their home districts, nor does the location of the defendant's home have 'independent significance in determining whether transfer to that district would be in the interest of justice.' ") (quoting *Platt*, 376 U.S. at 245-46). Although defendants "have no constitutional right to a trial in their home districts," it is a factor to be considered. *Daewoo*, 591 F.Supp. at 160.

In weighing the above factor, the court notes that co-defendant Daoqin Liu has plead guilty to the indictment and is pending sentencing by this court. Defendants Lu and Weng are currently located within this district. Defendant Lu is currently released to his mother who has traveled to Guam from Los Angeles to be near his son as he awaits his criminal prosecution. Defendant Weng is also released to the custody of Lu's mother.

The Defendants thus are currently in Guam and are not located elsewhere.

2. Location of possible witnesses.

The government has filed a witness list that contains 22 names. Defendants contend that only four of these witnesses are necessary for the government to prove its case.

Page -3-

Defendant Lu contends that all the witnesses that are necessary for this trial will be located in Los Angeles. An investigation must be undertaken in Los Angeles to try to locate and identify "Ace" and other witnesses who may have seen the defendants when they met at a local restaurant in Los Angeles.

Defendant Lu argues that if the majority of witnesses reside in another district, courts have been willing to transfer the case to that other district. *See U.S. v. Dalitz*, 248 F.Supp. 238, 242 (S.D. Cali. 1965). In *Dalitz*, the defendants were charged with conspiracy and the United States filed the case in the United States District Court, Central District of California. The defendants moved to transfer the case to the District of Nevada because the majority of witnesses who will be called to testify reside in Nevada.

Defendant Lu further argues that his alleged crimes all originated in Los Angeles. *See* Complaint, pg. 2. He boarded the plane in Los Angeles with the alleged counterfeit access devices and allegedly conspired with others in Los Angeles to defraud the United States. The only connection to Guam in this case is the Defendant landing, completing his travel, and being arrested on Guam. Any individual who may have witnessed any part of the alleged conspiracy, acquisition of the access devises, or decision to travel to Guam will be in Los Angeles. Therefore, like the defendants in *Dalitz*, Defendant Lu's request to transfer the proceeding to the Central District of California should be granted.

The court notes, however, that the Defendants herein are not charged with conspiracy.

Defendant Weng states that there is a minimum of four persons who may be possible witnesses for him and all his witnesses are from the Los Angeles area. They include his mother, wife, and a doctor. However, in terms of numbers of possible witnesses, it appears that the majority of possible witnesses are from Guam. This factor at the moment appears to favor the government.

3. Location of events likely to be an issue.

Defendant Lu argues that the alleged conspiracy originated in Los Angeles and that location is likely to occupy a majority of the events at issue.

Defendant Lu contends that his alleged crime began in Los Angeles. *See* Complaint. He

further argues that the alleged conspiracy and unlawful use of access devices did not occur in Guam. The alleged conspiracy was formed in Los Angeles, and any activity that may have led to the alleged acquisition and unlawful use of access devices has occurred in Los Angeles. Moreover, the main overt act of boarding the plane occurred in Los Angeles. Thus, Guam has little to no connection to this case. Thus, this Court should then transfer the case to the proper venue, Central District of California.

The Government on the other hand argues that the events at issue in this case occurred on Guam. Defendants possessed the counterfeit access devices in Guam. The Government also points out that the charges in this case, however, center on the possession of the counterfeit access devices in Guam. This factor does not favor transferring the case to Los Angeles, California. Again, the court also notes that Defendants are not charged with conspiracy but rather with unlawful possession of 15 or more access devices.

Based on location of events likely to be in issue, venue should reasonably be in Guam.

4. Location of documents and records likely to be involved.

Defendants argue that any correspondence or written record or evidence regarding this case will be found in Los Angeles. *See* Complaint. The alleged conspiracy was formed in Los Angeles, and that is where the prosecution and defense will find discovery for this proceeding. Guam likely has no documents or records that could implicate or exonerate Mr. Lu. All of the discovery in the case will have to be sent from Los Angeles and transferred to Guam. In particular, the individual known as "Ace" who according to the Complaint supplied the credit cards in this case works for a Chinese organization based in California. Complaint, pg. 5. Any and all evidence of the origin of the credit cards will be found in Los Angeles. Thus, Defendant Lu argues that for the convenience of the parties in gathering discovery and the interests of justice weigh heavily in transferring the case to the Central District of Los Angeles. Defendant Weng echoes the same concerns raised by Defendant Lu.

The Government on the other hand argues that all the "documents and records (comprised of reports of investigations, surveillance, lengthy Cellebrite forensic examinations of multiple cellular phones, physical evidence, etc.) in this case are all located in Guam." Thus, the Government argues that this factor weighs against transferring the case to Los Angeles,

California.

5. Disruption of defendant's business unless the case is transferred.

Neither Defendant Lu nor Defendant Weng have businesses that would be disrupted if the case were not transferred to the Central District of California. This factor would not favor Defendants.

6. Expense to the parties.

Defendant Lu argues that his mother is traveling to Guam to be with him and is missing work which creates a great hardship that will affect herself and Lu.

By traveling to Guam, Ms. Gong, Mr. Lu's mother, is disrupting her job and ability to make a living for her family. Because the case is in Guam, Ms. Gong is forced to fly here and assist her son when she could do so without disrupting her job if the case were transferred to Los Angeles. However, if this Court were to transfer the case to the Central District of California, the interests of justice would be served because Ms. Gong would not only indefinitely be present to assist her son while he awaits trial but also continue to work, thereby preventing the disruption of her and her son's livelihood.

Defendant Weng acknowledges that he is indigent and that expenses to taxpayers will be significantly less if the case were to be transferred.

The government, on the other hand, argues that under *Platt*, the court must also consider the expenses to the Government.

As to this specific issue, a trial in Guam will not involve enormous expense to the taxpayers as the witnesses reside in Guam. However, if venue is changed, the government (and taxpayers) will incur the significant and increased expenses of flying Special Agents, Task Force Officers, Guam Customs Officers and witnesses to California for a trial that can more economically occur on Guam.

7. Location of Counsel.

At the present time, both attorneys representing Defendants Lu and Weng are located in Guam. Lu argues that he wants Mr. Samuel Tyre, an attorney who resides in California, to represent him in this matter. Mr. Tyre is acquainted with Lu's mother, Ms. Gong, and has a full

time Chinese interpreter on his staff. The court, however, notes that Lu has court appointed counsel because he does not have the means to retain an attorney. While his mother may be able to retain an attorney on his behalf, there is no other attorney representing Lu other than his court appointed counsel. Thus, the court finds that this factor does not weigh in favor of Defendants.

        8. Relative accessability of place of trial.

Defendant Lu contends that Guam, being a foreign and vastly different environment, is placing unnecessary strain and difficulty on himself and family. Defendant Lu is probably correct that Guam is a different environment from his home district in Los Angeles. Los Angeles would be more accessible than Guam for his family considering travel time, distance, and convenience. However, Guam is not inaccessible as a venue for the trial herein. There are daily flights from Los Angeles to Guam. In addition to the fact that he does not speak English, Defendant Lu also points out that he is incarcerated in Guam solely because his trip ended here and he is forced to stay and await trial herein. Lu, however, is currently released on bail to the custody of his mother. Thus, he is currently not incarcerated.

As the court has pointed out above, it appears that currently most of the witnesses are located in Guam. These are the Government's witnesses. Guam would be more accessible to these witnesses. Thus, this factor does not necessarily favor Defendant.

        9. Docket condition of each district.

Defendant Weng submits that the docket in Los Angeles is more congested than Guam's docket. Guam may afford a speedier resolution of this case than a transfer to the Central District of California.

        10. Any other special elements which might affect the transfer.

In assessing the relative factors herein, the court is also concerned with the charge against Defendants in the indictment. The Indictment states:

The Grand Jury Charges:

On or about September 14, 2017, in the District of Guam, the defendants, DAOQIN LIU, YUNKAI LU, and ZIWEN WENG, knowingly and with intent to defraud, possessed counterfeit access devices, to wit: approximately one hundred eighteen (118) counterfeit credit cards, that are counterfeit, fictitious, altered or forged, **said possession affecting interstate and foreign commerce, in that the**

| | |
|---|---|
| 1 | **counterfeit access devices were transported from the State of California to the Territory of Guam, all in violation of Title 18, United States Code, Sections 1029(a)(3), (c)(l)(A)(i), and 2. (Emphasis added.)** |
| 2 | |
| 3 | A critical element of the charge against Defendants is the Defendants' actual |
| 4 | transport of the 118 counterfeit access devices to Guam. It is this conduct in the charge that |
| 5 | would provide the necessary element for the offense that Defendants' conduct in some way |
| 6 | affected interstate commerce. |
| 7 | Defendants argue for a transfer to the Central District of California because |
| 8 | discovery as to the origin of these counterfeit access devices would necessarily be |
| 9 | conducted there. |
| 10 | Based upon the charge that Defendants transported said counterfeit access devices in |
| 11 | interstate commerce from Los Angeles to Guam, discovery as to the origin of these |
| 12 | counterfeit access devices become irrelevant because it is the transportation of these |
| 13 | counterfeit access devices from California to Guam that provide the element that |
| 14 | Defendants' conduct affected interstate commerce. It is not the origin of the counterfeit |
| 15 | access devices. Thus, from the Government's point of view, the Guam witnesses become |
| 16 | the more relevant and essential witnesses to a prosecution of this case. |
| 17 | Furthermore, as the court has pointed out above, Defendants are not charged with |
| 18 | conspiracy. Thus, discovery as to that issue is not a relevant issue. |
| 19 | The court is not unmindful of the youthfulness of the two remaining Defendants |
| 20 | awaiting trial and the fact that their families reside in Los Angeles. Defendant Lu's mother |
| 21 | has traveled great distances to be with her son. While the court sympathizes with |
| 22 | Defendant's mother's commitment to her son, her expenses cannot be considered a party's |
| 23 | expense. |
| 24 | Having weighed all the factors above, the court finds that most of the possible |
| 25 | witnesses herein reside within Guam. A co-defendant has actually pled guilty to the |
| 26 | indictment and is awaiting sentencing in this district. The Defendants are charged with the |
| 27 | offense of unlawful possession of 15 or more counterfeit access devices and not with |
| 28 | conspiracy as Defendant Lu asserts. The Defendants are currently within this district and |

the attorneys representing them also reside in this district.  The indictment alleges that Defendants affected interstate commerce by transporting the counterfeit access devices from Los Angeles to Guam.  Thus, discovery as to the origin of the counterfeit access devices does not appear to be relevant or necessary.  Because the indictment charges that Defendants transported to Guam the counterfeit access devices from Los Angeles, Guam becomes the appropriate venue for the trial of the case as most of the witnesses needed to show that Defendants transported the counterfeit access devices to Guam reside in Guam.

For all of the above reasons, Defendants' motion to transfer venue is hereby denied.



**/s/ Joaquin V.E. Manibusan, Jr.**
**U.S. Magistrate Judge**
**Dated: Nov 14, 2017**